(No. 33030.—

The People of the State of Illinois, Defendant in Error, *vs.* Lyle Bennett, Plaintiff in Error.

*Opinion filed May 24, 1954—Rehearing denied September 20, 1954.*

BERNARD MAXWELL, of Canton, and ROY P. HULL, of Peoria, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and ROGER W. HAYES, State's Attorney, of Macomb, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Lyle Bennett, was found guilty by a jury in the circuit court of McDonough County of the crimes of burglary and larceny. His motion for a new trial was overruled, and, after a hearing in aggravation and mitigation of the offense, he was sentenced by the court to serve a term of not less than ten years nor more than thirty years in the Illinois State Penitentiary. He prosecutes this writ of error to review the proceedings and judgment of the trial court. By a prior decision of this court, (*People* v. *Bennett*, 413 Ill. 601,) after an earlier trial and conviction by jury upon the same indictment, the judgment was reversed and the cause remanded for a new trial.

The evidence for the People, most of which is undisputed, shows that on the night of March 19, or early morning of March 20, 1951, the grocery store and meat market operated by one Glen Adkisson in the city of Macomb in McDonough County was burglarized and a quantity of meats and coffee and a meat grinder were removed from

the premises. The store was securely locked by the proprietor when he left the building about 8:00 o'clock P.M. on March 19. The following morning, March 20, at about 8:15 o'clock A.M. an employee, Bill Castleburg, discovered that the rear doors of the building had been broken and extensively damaged and that the articles in question were missing. Meanwhile, at about 2:30 o'clock A.M. on the 20th, plaintiff in error and one Everett Kirkpatrick appeared at the kitchen door of a tavern and eating establishment, known as the Rainbow Gardens and located near the city of Canton in Fulton County, a distance of some forty miles from the burglarized premises. The proprietor of the Gardens, Paul Cardosi, was in the kitchen of his place of business preparing to close for the night when plaintiff in error and Kirkpatrick sought admittance. After opening the door and at their request he accompanied them to a small building a short distance south of the tavern where plaintiff in error and Kirkpatrick showed him a meat grinder, later identified as the stolen machine, as well as a large quantity of coffee in pound tins and an undetermined amount of cold meat. Plaintiff in error asked Cardosi to purchase the machine and other articles. After some discussion, Cardosi purchased the lot for $190 which he paid in cash. That same day Cardosi sold most of the meat and coffee to his brother who ran a restaurant in Canton and took the meat grinder to the basement of his mother's home. On March 23, 1951, Cardosi, having been summoned to the police station in Canton, was questioned as to his possession and purchase of these articles. He admitted possession and delivered the grinder and some of the meat to the police. Plaintiff in error was arrested in Canton on the same day and taken to the McDonough County jail in Macomb.

The sheriff of McDonough County and two deputies testified that on the following morning, March 24, a conversation took place in the jail at Macomb, at which the

State's Attorney, plaintiff in error and the sheriff and deputies were present. At that time the State's Attorney asked the plaintiff in error his name and address. After plaintiff in error had replied, the State's Attorney stated that he was accusing him of burglarizing the store in question, on the night of March 19 or early morning of March 20, with the assistance of Everett Kirkpatrick. To this Bennett made no reply. The State's Attorney then said: "Do you deny it?" Plaintiff in error said: "I have nothing to say." The State's Attorney then told plaintiff in error that Paul Cardosi had told them that he (Bennett) had sold him the stuff, whereupon plaintiff in error stated that he would take care of Cardosi when he got out on bonds. The evidence of this conversation was admitted over objections of defense counsel and their motion to withdraw a juror was overruled.

Plaintiff in error testified in his own behalf. He does not deny that he sold the articles in question to Cardosi. He testified that he bought the grinder, coffee and meat from a man named Brown whom he and Kirkpatrick met in a small coffee shop in Canton at about 12:30 o'clock A.M. on March 20, the night of the burglary. According to plaintiff in error, he accompanied Brown to the parking lot next to the coffee shop where Brown showed him the articles in the back seat of a car, after which they returned to the coffee shop and the plaintiff in error and Kirkpatrick purchased all of the articles for $150, each furnishing part of the purchase price; that the deal was consummated in "two, three or four minutes;" that they then drove in separate cars to the building in the rear of Cardosi's place where the merchandise was unloaded after which Brown drove away. Plaintiff in error stated that he did not know Brown; that he does not recall his first name; that he sought no identification and does not remember the make of car Brown was driving.

The remaining evidence adduced by plaintiff in error was the testimony of five witnesses tending to establish an alibi. Some had seen him in the Rainbow Gardens, the establishment operated by Cardosi, during the evening of March 19. Two testified that they saw him in the coffee shop in Canton between 12:30 and 1:00 o'clock A.M. on March 20. None of these witnesses testified he saw the plaintiff in error in Canton later than 1:00 o'clock A.M. The next witness to see plaintiff in error on March 20 was Paul Cardosi to whom he sold the articles as heretofore related.

Plaintiff in error contends that the court erred in admitting the evidence of the conversation which took place in the McDonough County jail on March 24. This court has often announced the rule that an admission may be implied from the conduct of a party charged with a crime who remains silent when one states in his hearing that he was concerned in the commission of the crime, when the statement is made under circumstances which allow an opportunity to him to reply and where a man similarily situated would ordinarily deny the imputation. (*People* v. *Nitti,* 312 Ill. 73; *People* v. *Andrae,* 305 Ill. 530; *People* v. *Paisley,* 299 Ill. 576; *People* v. *Seff,* 296 Ill. 120; *People* v. *Tielke,* 259 Ill. 88.) It is also true that evidence of this character should be received with great caution and only under proper conditions. Where charges against him are made in the presence of an accused person under circumstances such that he is in no position to deny them, or if his silence is of such character that it does not justify the inference that he should have spoken, or if in any way he is restrained from speaking either by fear, doubt of his rights, instructions given him by his attorney or a reasonable belief that it would be better or safer for him if he kept silent, his standing mute does not amount to the admission of the charges against him. Under those condi-

tions, the statements themselves, and the fact that the accused kept silent are not admissible in evidence. *People v. Koslowski*, 368 Ill. 124; *People v. Hanley*, 317 Ill. 39.

The authorities make it clear that whether evidence of an implied admission is properly received in a given case depends upon the circumstances surrounding the alleged admission. The occurrence from which an admission is sought to be implied in this case involves a different episode than that which was before us in *People v. Bennett*, 413 Ill. 601. On the present record, it appears that the plaintiff in error was questioned about the burglary immediately after his arrest, and he denied participation. Ordinarily he would not be bound to continue to reiterate that denial every time an accusation was made against him while he was in police custody. (*People v. Bennett*, 413 Ill. 601.) The circumstances here, however, involve more than naked repetitions of a charge of guilt. The occurrence in question took place the morning after the arrest, when plaintiff in error was confronted for the first time with the fact that Cardosi had implicated him. His reaction to this new information was, we think, admissible. The jury was entitled to believe that his reply was that he would take care of Cardosi when he got out on bond, and was entitled to consider that reply as indicative of guilt. For this reason we are of the opinion that the trial court did not err in permitting the evidence in question to go to the jury.

Certain errors have been assigned upon the giving of instructions. Instruction No. 9 given on behalf of the People told the jury that if it believed from the evidence beyond a reasonable doubt that the store in question had been broken into and the goods stolen and that the goods were shortly thereafter found in the exclusive possession of the defendant and that he had failed to give a satisfactory explanation of such possession, that it might consider such evidence as creating an inference that de-

fendant had broken and entered the store with intent to commit larceny; that after considering all the other facts and circumstances in evidence, in the absence of other evidence, causing a reasonable doubt of his guilt, it might find him guilty. Plaintiff in error objects to this instruction because he states that it requires him to assume the burden of giving a satisfactory explanation of his recent possession of the property, whereas the burden is upon the State at all times to prove him guilty. This court has often announced the rule that the possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person or persons in whose possession it is found and is sufficient to warrant a conviction unless such possession is explained or unless there appears from all the evidence a reasonable doubt of the defendant's guilt. (*People* v. *Kasallis,* 385 Ill. 158; *People* v. *Sampson,* 337 Ill. 643.) The court may properly instruct the jury to that effect. (*Williams* v. *People,* 196 Ill. 173.) In the case last mentioned the court charged the jury in substance that the possession of stolen property, the proceeds of a burglary, robbery or larceny, soon after the commission of the offense, is *prima facie* evidence of the guilt of the person in whose possession it was found, and that such possession is sufficient to warrant a conviction unless the possession is satisfactorily explained, or unless there appears from all the evidence a reasonable doubt of the guilt of the defendant. The instruction was approved and judgment affirmed. Plaintiff in error relies on the case of *Miller* v. *People,* 229 Ill. 376, to sustain his contention. In that case the court charged the jury that if it believed from all the evidence, beyond a reasonable doubt, that a burglary was committed as charged in the indictment and that the property introduced in evidence was stolen and that shortly thereafter it was in the possession of the defendant, then the possession of the property by the defendant recently

after the commission of the offense, unsatisfactorily accounted for, was *prima facie* evidence that the defendant committed such larceny and burglary and such evidence, if any, was sufficient to warrant a conviction of the defendant, unless there appeared from the facts and circumstances in evidence a reasonable doubt of defendant's guilt. This court held that the instruction was erroneous because as it was worded the jury might have been lead to assume that the court believed that the explanation of plaintiff in error as to how he came into possession of the property was unsatisfactory, and for the further reason that the instruction did not connect the stealing of the property with the burglary or larceny charged in the indictment. The same objections do not apply to the instructions in this case. By its terms the jury is required to find, beyond a reasonable doubt, that the goods were found in defendant's exclusive possession and that he failed to give a satisfactory explanation therefor. The jury was further required to find that all the other evidence did not raise a reasonable doubt of defendant's guilt. Moreover, the other instructions given in behalf of plaintiff in error were ample to instruct the jury that the burden of proof was upon the State at all times and all stages of the trial to establish his guilt beyond a reasonable doubt. The instruction did not have the effect of placing on plaintiff in error the burden of proving that his possession of the property was satisfactorily explained. The other cases relied upon by plaintiff in error, namely *Hoge* v. *People,* 117 Ill. 35, and *People* v. *Kubulis,* 298 Ill. 523, are also distinguishable. In the latter case, for example, the instruction was objectionable if for no other reason than that the possession of the defendant as established by the evidence was some 24 or 25 days after the commission of the crime. In such case the possession of the property cannot be considered to be recent or soon after the com-

mission of the offense. By way of contrast, the undisputed evidence in this case shows that defendant was found in possession of the property within $6\frac{1}{2}$ hours of the commission of the crime.

The numerous other objections to instructions will not be discussed. We have carefully examined all of the instructions given and they were ample to state the law applicable to the case and safeguard the rights of the accused. It is worthy of note that plaintiff in error tendered nineteen instructions only two of which were refused by the court and those were obviously repetitions.

Further objection is made that the court unduly limited the examination of plaintiff in error. An inspection of the record reveals that the court did prevent counsel for defense from asking many leading questions. This was proper. In no other respect can the examination be considered limited. It appears that plaintiff in error told his story fully and completely and it is not pointed out by offer of proof or otherwise just wherein plaintiff in error did not or was not allowed to say just what he had to say.

From the evidence the jury was clearly warranted in finding that the guilt of the defendant was established beyond a reasonable doubt. The defendant did not deny possession of the stolen property. Rather, he told a story of how he came into its possession which the jury might justifiably find to be highly unlikely. His alibi does not cover all of the time during which the crime might have been committed, to which may be added the comment that some of the witnesses appeared to be not too certain and one even reluctant. We believe the plaintiff in error had a fair trial and that the judgment of conviction should be affirmed.

*Judgment affirmed.*