(No. 36330.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIE SMITH, Plaintiff in Error.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

DONALD W. COHEN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Willie Smith, was indicted for rape and found guilty by a jury, which fixed his punishment at 25 years in the penitentiary. Judgment of conviction and sentence thereon were entered by the criminal court of Cook County, and defendant has brought this writ of error to review the cause.

Defendant assigns as error the State's failure to prove him guilty beyond a reasonable doubt; the improper admission of hearsay evidence and of testimony relating to his failure to deny accusations; and the submission of a prejudicial alibi instruction.

The complaining witness, Mrs. Moore, testified that at about 9:45 P.M. on December 6, 1959, as she was walking from her mother's home down the brightly lighted Drake Avenue, near 16th Street, in Chicago enroute to a nearby hot-dog stand, she was accosted bv defendant. He held a gun to her back, threatened to kill her if she didn't go with him, and forced her to walk down an alley to a back yard. He demanded money, tore open her blouse and took her wallet which had been concealed in her undergarment, and

then struck her twice with his fist, knocking her out. When she regained consciousness, he was having intercourse with her. He remained there about 10 to 15 minutes, then got up and brushed himself off. Before he ran away he warned her to stay there. As soon as the complaining witness was free, she ran to the nearest lighted house. When the woman, a Mrs. Scott, opened the door, the complaining witness "fell in" and explained that she had been robbed, beaten and raped.

In this connection, Mrs. Scott testified that around 10:00 P.M. she heard someone screaming, "Open the door, open the door. Somebody is trying to kill me." When she opened the door, the complaining witness, a woman she had never seen before, ran in screaming that a man had robbed and tried to kill her. According to Mrs. Scott, the woman was without one shoe, and her legs and feet were muddy, as though she had been lying on the ground. Mrs. Scott helped her up and asked her if she wanted to call her people. The complaining witness then telephoned her sister, and remained in the Scott home for about 15 minutes, until her family came to get her. They took her to Mt. Sinai Hospital, and then to the police station where she gave the police a description of the man who raped her, and of the crime.

Some weeks later, on January 3, 1960, when the complaining witness was with her sister and the latter's boy friend at the Triple Dollar Tavern, she recognized the defendant as the man who had raped her. They called the police while the sister's boy friend trailed defendant to his house. A short time later the complaining witness accompanied a police officer to the defendant's house. The officer brought defendant out on the porch, and asked the complaining witness if she recognized anyone. The witness pointed to defendant as the man who had raped her. Defendant was then standing just a few feet from her, and he said nothing. These circumstances were corroborated by the arresting officer.

While defendant did not deny that he said nothing or that the complaining witness pointed him out, he claims that he received no answer when he asked why he was being arrested. The police officer, however, claims that he told defendant on the way to the station that he was being arrested in connection with a rape.

At the station the complaining witness again identified defendant from among the line-up of some seven men. According to her testimony, defendant then made no comment. Defendant, however, testified that when he was told that the lady accused him of robbing and raping her, he said, "No, sir." When asked by the officer where he was on December 6, at about 9:45 P.M., he answered that he was at home watching television, and also that he had been at the Triple Dollar Tavern.

On the stand defendant testified that he was with Freddy Banks, a cousin, at the Triple Dollar Tavern, between 6:00 and 9:45 P.M., when they went home and watched television. He claimed that he recalled the hour because he had mentioned that it was getting late, and he had to go to work the next day. On defendant's behalf, his cousin, Freddy Banks, testified that on December 6 he and defendant came home from work about 5:00 P.M., had dinner, and then went to the Triple Dollar Tavern where they were in each other's presence until 10:00 P.M. Then they went back to the house, where they each had rooms, and watched television in Freddy's room until 11:00 or 11:30 P.M. The record shows that Freddy was married and that his wife was in the vicinity, but she did not testify.

On the basis of substantially the foregoing evidence the jury returned a verdict of guilty and fixed defendant's sentence at 25 years in the penitentiary.

Defendant argues that Mrs. Scott's testimony that the complaining witness came to her door screaming that someone had tried to kill her constituted inadmissible hearsay evidence, and was therefore reversible error. The prosecut-

ing witness had, however, herself testified fully as to this occurrence, and the error, if any, in admitting the testimony of Mrs. Scott was harmless.

Defendant contends further that the admission of testimony relating to defendant's failure to deny the accusations was also reversible error. Our case law reiterates the rule that an admission may be implied from the silence of one who is accused of a crime, on the ground that "it is the nature of innocence to be impatient of a charge of guilt, and an innocent person will usually spontaneously deny the accusation and challenge the charge." (*People* v. *Bennett,* 3 Ill.2d 357; *People* v. *Nitti,* 312 Ill. 73, 90.) The silence is viewed in the same category as flight or similar conduct reflecting upon defendant's innocence or guilt, rather than as a confession. (*People* v. *Nitti,* 312 Ill. 73, 92.) In order that silence may be deemed an admission, however, it must appear that the accused heard the accusation, and that it was made under circumstances which allowed an opportunity for the accused to reply, and where a man similarly situated would ordinarily have denied the imputation. *People* v. *Bennett,* 3 Ill.2d 357, 361.

In the case at bar, when the officer brought defendant out on the porch of the house where he lived, the complaining witness pointed to him and said within his hearing, "That's the man who raped me." According to the testimony of the complaining witness and of the officer, defendant made no denial or protest of any kind. Moreover, even according to defendant's testimony, in which he claimed he didn't know why he was being arrested, it should have been obvious to him that he was being accused by the woman of a crime. Inasmuch as this occurred on his own front porch, where there was ample opportunity for him to reply, and no conceivable restraint, defendant's silence at that time certainly could be considered an implied admission. There was, therefore, no error in allowing the testimony.

Similarly, defendant's failure to deny the charge when

the complaining witness identified him at the police line-up, after he had been arrested, was also tantamount to an admission. We have never held that the fact that the accused was under arrest or in custody constituted a sufficient restraint to make the accusatory statement and his silence inadmissible *per se.* (*People* v. *Kozlowski*, 368 Ill. 124.) The fact of custody would merely be taken into account and weighed by the jury, but the admission of the evidence in no way constituted grounds for reversal.

Defendant cites as further error the State's Attorney's remark in his opening statement that an alibi must cover the entire period of the crime. Defendant's counsel made no objection at the time. It was the duty of defendant's counsel to object if the remark could conceivably have prejudiced defendant. (*People* v. *Rogers,* 303 Ill. 578.) As stated by this court in the *Rogers* case at p. 586, "His counsel by their silence permitted such statement and cannot now complain."

Defendant's contention that the State's alibi instruction was reversible error cannot be summarily dismissed, as argued by the State, for failure to comply with our rule that all given and refused instructions must be abstracted. (*People* v. *Allen,* 17 Ill.2d 55, 63.) Since defendant set forth in a supplemental abstract all the given instructions, and explained that there were no refused ones in the court files, we shall consider the merits of that issue.

The controverted instruction is: "The court instructs the jury, as a matter of law, that before defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime and be supported by such facts and circumstances in evidence as are sufficient when considered in connection with all the other evidence in the case to create in the minds of jury a reasonable doubt of the truth of the charge against the defendant."

Defendant argues that since his alibi evidence purports to cover the entire period of the crime, it was error to give that instruction relating to the time requirement. In support

thereof defendant cites *People* v. *Pearson,* 19 Ill.2d 609. The instruction there was obviously distinguishable in its terms. It provided not only that the alibi must cover the whole of the time of the commission of the crime, but repeated that "unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, then the defense is not available to such defendant."

In contrast, the instruction here merely defines the concept as the court was obliged to do, since it was the basis of defendant's defense, and in no way implies that defendant's evidence was insufficient, or imposes an undue burden on him, as did the *Pearson* instruction. Furthermore, since the *Pearson* case held that the objectionable instruction was not reversible error in view of other instructions and the fact that it did not affect the outcome, that case can hardly be deemed a determinative authority for reversal here.

Nor is *People* v. *Gardner,* 4 Ill.2d 232, also cited by defendant, a determinative authority on this issue. Except for the fact that the objectionable instruction there used the word "alibi," it is entirely distinct in terms and effect from the instruction involved in the case at bar.

Moreover, when the controverted instruction here is viewed along with defendant's instruction No. 4, which sets forth his alibi theory, there could be no conceivable prejudice to defendant. That instruction, which was cited with approval in the *Pearson* case (19 Ill.2d 609, 615), concludes: "It is sufficient, if the defense on that point [alibi] raises a reasonable doubt of his presence at the time and place of the commission of the crime charged, and if it does, it is your sworn duty under the law to give the benefit of the doubt to the defendant and to find him not guilty."

Defendant argues further that the conviction should be reversed on the ground that the State did not prove him guilty beyond a reasonable doubt. The occurrence of the rape itself is established not only by the coherent account

of the complaining witness, but is corroborated by the testimony of the woman into whose house she ran immediately afterwards, describing her screams, and her disheveled appearance. The crime itself is further supported by the circumstantial evidence that the witness was taken by her family directly to the Mt. Sinai Hospital, and then to the police station where she described defendant and the offense.

Defendant was unequivocally identified by the injured woman as the man who perpetrated that crime. She recognized him in the Triple Dollar Tavern, and also when the police officer brought him out on his front porch, and again when he stood in the line-up at police headquarters with six other men, including some of similar height and build. The reliability of those identifications is enhanced by the fact that she had the opportunity to get a good look at him at the time of the crime. Drake Avenue, where defendant originally accosted her, was well lighted, and, although it was darker in the alley, when they were in the yard where he raped her there were lights shining from the buildings which were about 25 feet away. She could see his face at close range when he tore her blouse and when he was engaged in the criminal attack. She also could see his whole personage as he brushed himself off after he had raped her. Consequently, her identification under those circumstances was sufficient, even though the testimony is contradicted by the accused. *People* v. *Minor,* 388 Ill. 436.

Defendant's guilt is further supported by his silence when the complaining witness identified and accused him on his own premises, under circumstances where he was in no way restrained from protesting or denying the accusation.

It was the province of the jury to believe or disbelieve defendant's account, as corroborated by his cousin, that they had been at the tavern on the night of the crime until 9:45 P.M.—the time of the crime, and that they left because it was getting late and then went home to watch television together for another hour and a half. That testimony could

not be deemed to establish reasonable doubt of defendant's guilt as a matter of law.

Defendant's suggested theory that between the time the complaining witness was struck unconscious, which was about 10:00 P.M., and the time she regained consciousness, which was sometime between 10:00 and 10:30 P.M., someone else came along in the yard and raped her, is not only without a shred of supporting evidence, but was rebutted by the testimony of the complaining witness who stated that defendant himself raped her. Defendant's theory apparently did not impress the jury, nor does it impress the court.

Under this analysis, since the evidence proved that defendant was guilty beyond a reasonable doubt, and there were no reversible errors in the trial, the judgment of conviction and sentence are affirmed.

*Judgment affirmed.*