**People of the State of Illinois, Plaintiff-Appellee, v. Eugene Butler, Defendant-Appellant.**

**Gen. No. 50,619.**

First District, Third Division.

January 5, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Truman Larrey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was tried by jury for the crimes of rape and burglary with intent to commit rape. After a finding of guilty on both counts, he was sentenced to serve from 14 to 25 years in the penitentiary. On appeal he contends that (1) the State failed to prove guilt beyond a reasonable doubt; (2) the improper argument of the prosecutor prejudiced the jury; (3) the trial court erred in providing the jury with only one not guilty verdict although two separate crimes were charged. No evidence was offered on behalf of defendant, and the case rests on the testimony of the complaining witness as corroborated in substantial aspects by her son, her pastor and the arresting officers.

The prosecutrix Frances Farmer lived in a first floor apartment in Chicago with her three children. She testified that at about 4:00 a. m. on April 22, 1964, she and her 11-year-old son were awakened by a knock at the door. They did not open it, but asked the person to identify himself. The caller said, "I want Melvin," to which Mrs. Farmer replied, "Melvin does not live here." When he left, Mrs. Farmer raised a window and observed a man under a streetlight in front of the building. She asked him, "Why don't you try the other two floors, maybe Melvin lives up there," but the man disappeared without replying. At the trial Mrs. Farmer and her son identified the defendant as the person they had seen under the streetlight.

The following day, April 23, Mrs. Farmer was asleep in bed with her 7-year-old daughter when about 4:00 a. m. she was awakened by an intruder who knelt at the bed holding a gunlike object and said, "Don't move

and don't holler, this is a gun, if you holler, I'll kill you and your children, too." He placed a rag over her face and proceeded to have intercourse with her. She testified that during the act of intercourse she was able to move the rag from her eyes and get a good look at the man, whom she later identified as the defendant. Her daughter remained asleep throughout the occurrence. When the attacker finished, the prosecutrix said (in order, as she later testified, to trap him): "You can leave by the back door," and as he left she said, "Now you be sure to come back now." She then awakened her children and her son ran out and stopped a passing motorist, who took them to the police station. Mrs. Farmer was taken to Mount Sinai Hospital where an examination revealed the presence of sperm. She then returned to her apartment.

At about 2:00 o'clock that afternoon she was awakened from a nap by a knock at the door. She went to the window and observed the defendant in a car parked in front of the building. Thereafter she called the police to report the license number of the car and to inform them that she had spoken with the man in the parked car and asked him to return at 5:00 o'clock. According to the prosecutrix, this was another attempt to arrange a trap.

Later in the day she called her pastor, Reverend J. M. Stone, and asked him to come over with a gun so that he might protect her in the event the defendant returned. Defendant did not return at 5:00 o'clock. At about 9:00 o'clock that evening Police Officer John Palmer went to the apartment building. He met Reverend Stone on the street and when they entered the building, they saw the defendant knocking on Mrs. Farmer's door. When they asked him to explain his presence, he replied that he had a date with the lady who lived at that address, that he had met her earlier in the day but did not know her name. Officer Palmer arrested the defendant,

searched him and found a toy pistol. When questioned regarding the pistol, he said it belonged to his son and that he had other toys in his car. Palmer and another policeman searched the car, but did not find any toys. The prosecutrix returned home while the arrest was in progress. The officer asked her if the defendant was the man she had observed and she replied, "That's him, that's him right there." Mrs. Farmer's testimony was corroborated by the testimony of her son and that of the police officers and of Pastor Stone. Defendant offered no testimony, but contended nevertheless that the State failed to prove him guilty beyond a reasonable doubt. There is no merit in this contention.

 The prosecutrix and her son both identified the defendant and gave the police an accurate description of him. He was apprehended at the door of her apartment and at that time had a toy gun in his possession. This and the other evidence establishes the State's case. Counsel appears to be under the misapprehension that some special rule applies to the corroboration of the testimony of a prosecutrix in a rape case. He relies on Lord Hale's dictum that rape is easy to charge, hard to prove and harder to defend against. With all due regard for this ancient truism, it does not supplant the legally established measure of proof that the evidence should be sufficient to support a finding of guilt beyond a reasonable doubt. People v. Mack, 25 Ill2d 416, 185 NE2d 154. The testimony of one witness may be sufficient to identify a defendant as the perpetrator of a crime. People v. Lamphear, 6 Ill2d 346, 128 NE2d 892; People v. Tunstall, 17 Ill2d 160, 161 NE2d 300.

Defendant contends that the State did not prove that the act of intercourse was against the will of the prosecutrix. He points to Mrs. Farmer's testimony that her daughter lay quietly beside her at the time of the occurrence. This, it is argued, shows that she did not struggle with the intruder. The evidence is conclusive, however,

that defendant had what appeared to her to be a gun, a toy gun, to be sure, but nevertheless what appeared to the prosecutrix to be a weapon.

That there were inconsistencies in the testimony of the prosecutrix, as argued by defendant, is true. There are few cases in which there are not some such inconsistencies. She testified at the preliminary hearing that defendant forced her to remove her "slip, panties and topper." At the trial, however, she testified that she had been wearing only a half slip and that he did not have to remove it. Considering the conclusive evidence that the intercourse was against the will of the prosecutrix, this cannot be regarded as important. Immediately following the event in question, she asked the aid of a passing motorist, went to the police station, maintained close contact with the authorities, and enlisted the aid of her pastor in an attempt to trap the rapist. Her conduct was thoroughly inconsistent with the theory of consent, and her plan for trapping her attacker, although unusual, proved successful. There is ample evidence that she had reason to fear for her own safety and that of her children.

During the course of the closing argument the prosecutor referred to the defendant as a "beast," and defendant now argues that since there was no evidence of bestiality in the record, the remark unjustly imputed deviate conduct to the accused and was therefore improper and prejudicial. He cites People v. Garreau, 27 Ill2d 388, 189 NE2d 287. In that case the prosecutor said the defendant would rape a dog and every member of the jury if given the opportunity. This clearly denoted bestiality. In the instant case the reference to defendant as a beast did not imply bestiality, but only brutishness, as that term is commonly used. Also, his closing argument related to defendant's failure to deny that he was the man who committed the offense when in identifying him, Mrs. Farmer said, "That's him, that's him right

there." The prosecutor told the jury that under such circumstances silence constituted a tacit admission of guilt. Although the defendant did not object to this argument at the trial, he now contends that the comment was made solely for prejudice. Our courts have observed that it is the nature of innocence to be impatient of a charge of guilt, and that an innocent person will usually spontaneously deny an accusation. If the accused heard the accusation and had the opportunity to reply but failed to do so where a man similarly situated would ordinarily have denied the imputation, his silence may be deemed an admission. People v. Smith, 25 Ill2d 219, 184 NE2d 841; People v. Bennett, 3 Ill2d 357, 121 NE2d 595; People v. Nitti, 312 Ill 73, 143 NE 448. The comments of the prosecutor are supported by evidence of the accusation and by the defendant's failure to respond. Moreover, the argument to the jury was not objected to and does not warrant a reversal in any event.

■ The final point raised is that the court erred in providing the jury with only one not guilty verdict, when the defendant was charged with two separate crimes. The crimes were separate counts of the same indictment and were based on the same occurrence. We must credit the jurors with sufficient intelligence to acquit the defendant on one or the other of the counts if they saw fit to do so.

The evidence proved that defendant was guilty beyond a reasonable doubt, and we find no reversible error in the record. The judgment is affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.