THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE CIHAK, Defendant-Appellant.

First District (2nd Division)   No. 86—2955

Opinion filed April 26, 1988.

Daniel E. Radakovich, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Pat Brady, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant, Wayne Cihak, was charged with using a fictitious name and making a materially false statement on an Illinois application for a certificate of car title. The trial court found defendant guilty. Defendant appeals contending that the court erred in admitting evidence of defendant's prearrest silence and that he was not proven guilty beyond a reasonable doubt.

On December 19, 1984, Chicago police officer John Miller arrested defendant for knowingly permitting "another to register a vehicle with a fictitious name and address with the Illinois Secretary of State." Defendant's information charged that defendant was in violation of section 4—105(a)(5) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 4—105(a)(5)). Section 4—105(a)(5) provides that it is a violation for:

> "[A] person to use a false or fictitious name or address or altered, forged, counterfeited or stolen manufacturer's identification number, or make a material false statement, or fail to disclose a security interest, or conceal any other material fact on any application for any manufacturers statement of origin, certificate of title, junking certificate, salvage certificate, registration card, license plate, temporary registration permit, or registration sticker or commit fraud in connection with any application under this Act." Ill. Rev. Stat. 1983, ch. 95½, par. 4—105.

The following evidence was adduced at trial. On December 13, 1984, Officer Miller, who was assigned to a special law enforcement team that investigated professional organized auto theft criminal acti-

vities, received a telephone call from Sergeant O'Keefe of the Skokie police department. Pursuant to this telephone conversation, Officer Miller obtained a 1983 Buick Regal (Buick) with Illinois license plate number FSN 980 from the Skokie police department and brought it to the auto pound.

Officer Miller commenced an investigation of the theft of the Buick. He discovered that the Buick's vehicle identification number (VIN) was lG4AJ47AEH102499. The Secretary of State's office sent Officer Miller a license plate application form and a certified copy of the title for the Buick. While the license number on the chain of title was the same license number that was on the Buick, the VIN number on the chain of title was not the same VIN number that Officer Miller found on the Buick.

The last document on the certified chain of title was an application for an Illinois title dated June 22, 1984. The application referred to the Buick and listed the VIN number as lG4AJ47A7DH837712. The name of the applicant was John Daves or Davis (Daves) and the address that appeared below Daves' name was 1520 North Sheridan Road, Wilmette, Illinois, 60091. It appeared that Daves had signed the application. The application listed the Buick's seller as Ideal Auto Sales of 2853 South Kedzie and revealed that the Buick's title was to be mailed to C&J Automotive Enterprises, Ltd., 1780 North Milwaukee Avenue, Chicago, Illinois, 60647.

Upon receiving this information, Officer Miller endeavored to locate Daves. Officer Miller took the driver's license number that was assigned to that name and placed it into the computer. The computer revealed that there was no record of that driver's license number. Officer Miller's partner endeavored to locate Daves at the Wilmette address.

On December 19, 1984, Officer Miller and Sergeant Patrick McCafferty proceeded to C&J Automotive Enterprises, Ltd., located at 1780 North Milwaukee Avenue in Chicago. Defendant is the co-owner of C&J Automotive Enterprises, Ltd., doing business as Milwaukee Avenue Auto Parts. Defendant was present in the store; Officer Miller and Sergeant McCafferty then questioned defendant.

Officer Miller gave defendant the information regarding the Buick and the fact that the title had been mailed to defendant's address. He asked defendant to explain it. Defendant answered that he remembered it and that John, a friend of his, had asked him to secure an Illinois title for the vehicle and that it was necessary that a registered Illinois dealer apply for an Illinois title for the vehicle. Defendant stated further that he hand carried the application for title to the

Secretary of State's office and that he paid the $550 tax and $3 application fee; Daves later reimbursed him in full.

Officer Miller asked defendant who John Daves or Davis was and defendant responded that Daves owned a body shop on Lawrence Avenue and that defendant had seen Daves at automobile auctions. Officer Miller then asked defendant to telephone Daves so that Officer Miller could speak to him. Defendant called Daves but hung up the phone after defendant was told that "John" was not there and would be back until later that afternoon.

Officer Miller asked defendant to redial the number so that Officer Miller could confirm what defendant had just told him. Defendant complied; he redialed and handed the telephone over to Officer Miller. Officer Miller did not recognize the voice of the person who answered the telephone, but he asked if there was a person named John Daves or Davis there. The person on the telephone answered that there was no one there with that name. Officer Miller asked who was the owner of the shop and was told that it was John Hernandez.

Officer Miller hung up the telephone and confronted defendant. Officer Miller told defendant that he felt that defendant was trying to deceive him. Officer Miller told defendant that he did not believe that there was such a person as John Daves at that telephone number and that he believed that defendant attempted to deceive him when defendant made the first call and hung up before Officer Miller had a chance to talk to the party. Defendant made no response; he remained silent. At this point, Officer Miller placed defendant under arrest, advised him of his rights, and transported him to the police station at 1121 South State Street in Chicago.

After defendant was brought to the State Street police station, Officer Miller asked defendant if defendant would look at some photographs to see if he could identify the person that he knew as John. Defendant identified the photograph of one Joseph Mack and told Officer Miller that this was the person that he knew as John.

Defendant testified to the following. Defendant is the co-owner of Milwaukee Avenue Auto Parts. Milwaukee Avenue Auto Parts holds a wrecker's, rebuilder's, and dealer's license. Its primary business is selling auto parts, and side businesses include building and repairing automobiles as well as selling them.

Defendant attends automobile auctions regularly and uses his dealer's license to purchase complete cars from various dealers without becoming involved in paying taxes. John (defendant never learned what "John's" last name was) first approached defendant at an auction. Thereafter, John would buy cars and parts from Milwaukee Ave-

nue Auto Parts. At an auction, John asked defendant about a car that John had purchased. The State allegedly would not issue John a title for the car because he was no longer a dealer.

John brought a Minnesota title to defendant along with his application for an Illinois title and bill of sale from Ideal Auto Sales. John filled out and signed the application. The Secretary of State's office would not accept the application because it was outdated. Defendant received a current application and filled it out himself. Defendant left the original application and the new application at the front of his auto shop near the cash register so that John could sign it. John signed the application and took the original application with him; defendant was not present when John signed the application.

Defendant brought this application to the Secretary of State's office and paid the $550 tax and $3 application fee from his own funds. The back of the application was stamped with the C&J Auto rubber stamp. Thus, defendant would receive the title after it was processed. About one month later, defendant received the processed title; John then reimbursed defendant and took the title. Defendant, however, did not personally deliver the title to John.

In addition, defendant testified that the law requires him to keep a record book of the cars that he buys and sells. In the record book, defendant records from where and from whom he purchased the car. If he sold or scrapped the car, defendant lists to whom the car was sold or scrapped.

No entry for the Buick existed in defendant's record book. Defendant contended that the Buick was never recorded because defendant's company never bought the Buick. He further testified that he never inquired of John regarding his last name.

After a finding of guilty, the trial judge concluded with the following words:

"I find the defendant's actions, statements and explanations to be unworthy of belief and I find the State's evidence, including the defendant's admission that he filled out the application is an attempt to deceive the police in saying that there was a John Daves located on Lawrence Avenue, the false exculpatory statement and all the other circumstantial evidence, the totality of the evidence in this case presented by the State to be sufficient.

Thus, there will be a finding of guilty of fictitious name for vehicle titled in the manner and form charged. Finding of guilty."

Defendant's motion for a new trial was denied and the court then

conducted a hearing in regard to aggravation and mitigation. Defendant was sentenced to 18 months' probation with permission to report by phone, and a $500 fine and costs.

Defendant sets forth two arguments on appeal. First, defendant contends that the court improperly admitted evidence over his objection regarding his prearrest silence. Defendant also contends that he was not guilty beyond a reasonable doubt of registering a vehicle under a fictitious name.

■■ ■ The trial court properly admitted evidence of defendant's prearrest silence. When an incriminating statement is made in the presence and hearing of the accused, and the accused fails to deny, contradict, or object to the statement, both the statement and the fact that the accused failed to deny it are admissible as evidence of the accused's acquiescence in its truth. (*United States v. Mitchell* (8th Cir. 1977), 558 F.2d 1332; *People v. Miller* (1984), 128 Ill. App. 3d 574, 583, 470 N.E.2d 1222; *People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280.) To qualify as an admission by silence or an implied admission, it is essential that the accused heard the incriminating statement and that it was made under circumstances which allowed an opportunity for the accused to reply, and where a man similarly situated would ordinarily have denied the accusation. (*People v. McCain* (1963), 29 Ill. 2d 132, 135, 193 N.E.2d 784; *People v. Smith* (1962), 25 Ill. 2d 219, 224, 184 N.E.2d 841.) The theory behind permitting such an admission into court is that the natural reaction of an innocent person would be to deny the accusation. (*McCain*, 29 Ill. 2d at 135.) Therefore, evidence of the accused's silence in the face of an accusation is critical. *McCain*, 29 Ill. 2d at 135.

In *Mitchell*, the defendant appealed from his conviction of willfully and knowingly transporting a stolen motor vehicle in interstate commerce. On appeal, one of the defendant's contentions was that the trial court erred when it admitted evidence that the defendant remained silent after being accused of giving false information to the police. In disagreeing with the defendant, the court of appeals noted that the day after the defendant's arrest, the defendant signed a waiver of his *Miranda* rights and agreed to answer questions for the police.

When asked about his destination at the time of his arrest, the defendant replied that he was going to St. Louis to attend the funeral of homicide victim Jesse Owens. In the defendant's presence, a police officer phoned the St. Louis police department and was told that there had been no homicide victim named Jesse Owens. At trial, the police officer stated that when he confronted the defendant with this fact, the defendant remained silent. The defendant objected to the po-

lice officer's testimony.

The trial court overruled the defendant's objection, reasoning that the defendant had voluntarily given the police a false statement and that when confronted with a claim of falsehood, a person in the defendant's situation would normally be expected to give some further explanation. The trial court concluded that the defendant's failure to explain could be considered by the jury as bearing upon the defendant's guilt. The court of appeals agreed with the trial court's reasoning and held that the trial court acted properly when it admitted the police officer's testimony of the defendant's silence. *Mitchell*, 558 F.2d at 1335.

In *Miller*, the defendant, Marilyn, was convicted of syndicated gambling. Jon Sandusky (Agent Sandusky), a special agent with the Illinois Department of Law Enforcement, had a conversation with Marilyn's father, Robert Dugan, in regard to placing bets. Dugan gave Agent Sandusky a phone number and told Agent Sandusky to ask for Marilyn. Agent Sandusky called the number and spoke with Marilyn several times. Agent Sandusky placed approximately 11 bets totaling $2,375 with Marilyn.

One evening, Agent Sandusky saw Dugan with a woman at a restaurant. Dugan introduced the woman to Agent Sandusky. Dugan said, "This is my daughter, Marilyn, the one you call your bets into ***." (*Miller*, 128 Ill. App. 3d at 579.) At Marilyn's trial, the court admitted Dugan's statement into evidence. On appeal, Marilyn contended that Dugan's statement constituted inadmissible hearsay and was not an implied admission. While the appellate court concluded that Dugan's statement was not an implied admission, it held that Dugan's statement was the statement of a coconspirator and was thus properly admitted at the trial level under the coconspirator's declaration exception to the hearsay rule.

■ On the issue of whether Dugan's statement constituted an implied admission, the court first noted that in order for such a statement to fall within the implied admission exception to the hearsay rule, the People must show the defendant's failure to deny the accusation. (*Miller*, 128 Ill. App. 3d at 584.) The *Miller* court further noted that although it appeared that the defendant must have heard Dugan's statement, nothing in the record indicated whether the defendant remained silent or denied the accusation. (*Miller*, 128 Ill. App. 3d at 584.) The court thus concluded that because there was no direct proof of the defendant's reaction to Dugan's statement, Dugan's statement was inadmissible under the implied admission exception to the hearsay rule.

██ In the instant case, the evidence reveals that defendant remained silent in the face of Officer Miller's accusation that defendant had tried to deceive him. Because there is direct proof of defendant's reaction to Officer Miller's statement, under *Miller,* Dugan's statement would be admissible under the implied admission exception to the hearsay rule.

In *Morgan,* the defendant was found guilty of burglary and arson. At trial, Linda Harrison testified that she asked the defendant why he had set fire to Monroe's Cleaners. The defendant then asked Harrison how she knew that. Harrison replied that the defendant's brother had told her. The defendant proceeded to just laugh and shrug it off. (*Morgan,* 44 Ill. App. 3d at 462.) On appeal, the defendant argued that Harrison's testimony was inadmissible. The appellate court rejected the defendant's contention. The appellate court stated:

> "It is an established principle of law that when a statement is made in the presence and hearing of an accused, incriminating in character, and such a statement is not denied, contradicted or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal trial, as evidence of his acquiescence in its truth." *Morgan,* 44 Ill. App. 3d at 462.

The court continued that although the defendant's reaction was not one of silence, the defendant's response could not reasonably be construed as an unequivocal denial of the charge that he had set the fire. The court further noted that the defendant was not under arrest, in custody or the subject of investigation and that Harrison was not connected with any law enforcement officials. (*Morgan,* 44 Ill. App. 3d at 464.) In affirming the trial court's decision, the appellate court concluded that "[t]he defendant had every opportunity to deny or object to the accusation and it seems very probable that the ordinary person similarly situated would not have let this accusation go unchallenged." *Morgan,* 44 Ill. App. 3d at 465.

In the case at bar, defendant alleges that the trial court improperly admitted "the substance of the telephone call between Detective Miller and some unknown and unidentified person in convicting the defendant." When Officer Miller questioned defendant at defendant's Milwaukee Avenue Auto Parts store, Officer Miller asked defendant to telephone "John." Defendant did, and reported that "John" was not there. Officer Miller then requested defendant to redial the number and give the telephone to Officer Miller. When Officer Miller asked the party on the other end of the line to confirm that a "John Daves/Davis" worked there, the party answered that there was no "John Daves/Davis" at that location. Officer Miller then told defendant that

Officer Miller thought that defendant was trying to deceive him with that telephone call. Defendant made no response; he remained silent.

Defendant sets forth the following cases in support of his contention that Officer Miller's testimony regarding Officer Miller's confrontation of defendant and defendant's subsequent silence was inadmissible. See *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *People v. Aughinbaugh* (1967), 36 Ill. 2d 320, 223 N.E.2d 117; *People v. Smith* (1962), 25 Ill. 2d 219, 184 N.E.2d 841; *People v. Bennett* (1954), 3 Ill. 2d 357, 121 N.E.2d 595; *People v. Graves* (1986), 142 Ill. App. 3d 885, 492 N.E.2d 517; *People v. Malkiewicz* (1980), 86 Ill. App. 3d 417, 408 N.E.2d 47; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632; *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317.

A prosecutor may not seek to impeach a defendant by cross-examining that defendant about his failure to speak after receiving *Miranda* warnings. (*Doyle*, 426 U.S. at 611, 49 L. Ed. 2d at 94, 96 S. Ct. at 2241.) Such a use of the defendant's *post-arrest* silence violates the defendant's due process rights. (*Doyle*, 426 U.S. at 611, 49 L. Ed. 2d at 94, 96 S. Ct. at 2241.) On the other hand, use of a defendant's *prearrest* silence to impeach that defendant's credibility does not violate the United States Constitution. *Jenkins v. Anderson* (1979), 447 U.S. 231, 240-41, 65 L. Ed. 2d 86, 95-96, 100 S. Ct. 2124, 2130.

The issue before this court, however, is whether a defendant's prearrest silence may be used as *substantive evidence* against him. While *Doyle*, addresses the use of a defendant's post-arrest silence, *Jenkins* addresses the use of a defendant's prearrest silence to impeach the defendant's credibility. Neither *Doyle* nor *Jenkins* decided the issue that is presently before this court. Therefore, the *Doyle* and *Jenkins* decisions are not inconsistent with the trial court's finding that defendant's prearrest silence was admissible as substantive evidence.

Additionally, *Bennett*, *Malkiewicz*, *Aughinbaugh* and *Turner* dealt with the admission of the defendant's post-arrest silence. In *Bennett*, the defendant was charged with burglary and arrested. The morning after the defendant's arrest, the defendant remained silent when accused of the burglary. At trial, the court admitted evidence of the defendant's post-arrest silence. The appellate court affirmed.

*Bennett* is irrelevant here for two reasons. First, *Bennett* involved the defendant's post-arrest silence. Second, *Bennett* was decided before *Miranda* and before *Doyle*. In light of *Doyle*, the *Bennett* court's admission of the defendant's post-arrest silence was erroneous.

Likewise, *Malkiewicz* and *Aughinbaugh* involved the defendant's post-arrest silence. In both *Malkiewicz* and *Aughinbaugh*, the court held that the trial court's admission of the defendant's post-arrest silence constituted reversible error. Thus, since *Malkiewicz* and *Aughinbaugh* do not address the issue before this court, they are not inconsistent with the trial court's ruling that defendant's prearrest silence is admissible as substantive evidence.

The *Turner* court also addressed the issue of admission of the defendant's post-arrest silence. In *Turner*, however, the court held that the defendant's post-arrest silence was admissible at trial. Although the *Turner* court noted the *Miranda* and *Aughinbaugh* decisions, the *Turner* court held that because there was nothing in the record to show that the defendant's silence was the result of fear of bodily harm, physical pain and suffering, threats, or advice of counsel, evidence of the defendant's post-arrest silence was admissible.

*Smith, Graves,* and *Deberry* all involved a defendant's prearrest silence. The *Smith* and *Graves* decisions are consistent with the trial court's finding in the case at bar and do not, in any respect, assist defendant. *Smith,* which was decided before both *Miranda* and *Doyle,* involved a defendant who was found guilty of rape. Several weeks after the alleged rape occurred, the victim recognized the defendant at a tavern. The victim called the police and accompanied the police to the defendant's house. When the police officer brought the defendant out onto the front porch, the victim pointed to the defendant and stated that he was the man who had raped her. The defendant was then arrested.

The defendant's failure to deny the victim's accusation was placed into evidence. On appeal, the defendant contended that the admission of his prearrest silence constituted reversible error. The appellate court disagreed and noted that the accusation occurred on the defendant's own front porch, that there was ample opportunity for him to reply, and that there was no conceivable restraint upon the defendant. In affirming the trial court's admission of the defendant's prearrest silence, the court concluded that the defendant's silence at that time certainly could be considered an implied admission. Contrary to defendant's position, *Smith* held that the defendant's prearrest silence was admissible at trial as an implied admission.

In *Graves,* the defendant was found guilty of murder. The victim had been stabbed in the chest. Following a police investigation, the defendant was implicated in the murder. Five days after the killing, the defendant surrendered to the police and, while in custody, confessed to the murder. The defendant also told the police that he was

under the influence of drugs and alcohol at the time of the murder. At trial, the defendant contended for the *first* time that he had stabbed the victim in self-defense.

The prosecutor cross-examined the defendant about the fact that the defendant had remained silent before he was arrested and did not go to the police to report that he had killed the victim in self-defense. The trial court allowed the prosecutor to cross-examine the defendant in this fashion.

On appeal, the defendant contended that the trial court erred when it allowed the prosecutor to cross-examine the defendant concerning the self-defense information that the defendant *did not* divulge to police authorities before he surrendered. In affirming the trial court's decision, the appellate court held that the use of a defendant's prearrest silence to impeach the defendant's credibility is constitutional. The court concluded that the prosecutor's cross-examination regarding the defendant's prearrest silence was a proper method to impeach the defendant's credibility.

The *Graves* court addressed the use of a defendant's prearrest silence to impeach that defendant's credibility. As mentioned earlier, the question before this court is whether use of a defendant's prearrest silence may be used against that defendant as substantive evidence. First, the *Graves* decision held that a defendant's prearrest silence may be used against that defendant to impeach his credibility. The *Graves* court did not hold that a defendant's prearrest silence could not also be used as substantive evidence against the defendant.

Second, the defendant in *Graves* did not remain silent following accusations or questions. Rather, the fact that the defendant did not seek out the police and set forth his self-defense claim is what constituted the defendant's prearrest silence. As mentioned above, the appellate court held that the defendant's failure to go to the police and report the incident and his self-defense claim was admissible to impeach the defendant's credibility.

In the case at bar, Officer Miller confronted defendant with the fact that Officer Miller thought that defendant was trying to deceive him. Thus, Officer Miller accused defendant of deception; defendant did not respond. Defendant, unlike the defendant in *Graves*, was not expected to speak when not spoken to. Rather, defendant was expected to deny Officer Miller's accusation that defendant was trying to deceive him. Under *Graves*, the court expected the defendant to provide unsolicited information to the police regarding his innocence. Pursuant to the rationale in *Graves*, it would follow that a direct accusation should be met with more than mere silence.

In *Deberry*, the defendant was convicted of the theft of car tires. Officer Haun observed a truck filled with tires and the defendant sitting on the passenger side. Officer Haun asked the defendant where he had received the tires. The defendant answered that they were from all over. The defendant then began naming towns. Officer Haun asked the defendant if the defendant had picked any tires up in Decatur. At about that time, Mr. Worthy, defendant's employer and codefendant, walked up and the defendant remained silent.

At trial, Officer Haun testified to his conversation with the defendant. On appeal, the court determined that the trial court erred in admitting Officer Haun's testimony regarding the defendant's prearrest silence. The court noted that one of the requirements for admission of the defendant's prearrest silence was that it must clearly appear that the defendant knew that he was being asked about the crime for which he was on trial. The court concluded that such a requirement was not met in that case. Applying the plain error doctrine, the appellate court reversed the court below and ruled in favor of the defendant.

In the case at bar, Officer Miller accused defendant of deception. Officer Miller did not ask defendant about the crime for which defendant was on trial: falsifying an Illinois application for a certificate of title. However, in *Deberry*, unlike the case at bar, the defendant was not accused of a crime. Rather, the defendant in *Deberry* was simply asked whether he had received any of the tires from Decatur. The defendant remained silent. From these facts, it would be erroneous to conclude that the defendant in *Deberry* remained silent following an accusation.

On the other hand, defendant here remained silent in the face of an accusatory statement. Officer Miller made an incriminating statement in defendant's presence, defendant had an opportunity to reply, and a man similarly situated would ordinarily have denied the accusation. Defendant, however, failed to deny, contradict, or object to the statement. In addition, the incriminating statement was made to defendant *before* he was arrested. Thus, in light of the *Miller, McCain, Morgan,* and *Smith* cases, the trial court in the present case properly admitted evidence of defendant's prearrest silence.

■ We note that defendant's brief fails to raise his second contention, regarding proof beyond a reasonable doubt, in the manner that the supreme court rules direct. Defendant raises his second contention within the body of his argument concerning the first contention and cites one case in support of his argument. Defendant cites *People v. Einoder* (1980), 82 Ill. App. 3d 1079, 403 N.E.2d 641 and

618

argues that facts there are similar to those at bar. A reading of that case fails to substantiate defendant's contention and we find that defendant was proven guilty beyond a reasonable doubt.

In view of the foregoing, the judgment of the circuit court is hereby affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.