(No. 33839.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE HOMER, Plaintiff in Error.

*Opinion filed March 22, 1956.*

EUGENE W. WOOD, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM L. CARLIN, and SAMUEL PAPANEK, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Joe Homer, was convicted of larceny after a trial without a jury in the criminal court of Cook County and was sentenced to the penitentiary for a term of not less than nine nor more than ten years. He assigns as error that the evidence did not prove his guilt beyond a reasonable doubt, that prejudicial evidence was improperly admitted, and that the State's Attorney was guilty of misconduct which deprived him of a fair trial.

The complaining witness, Edward Johnson, testified that on June 26, 1953, he was riding west on Roosevelt Road in a bus. He was seated near the front of the bus, and was carrying a fishing rod and a bag. As he rose to get off the bus, he felt a hand in his pocket and saw a man remove his wallet. Johnson shouted, and the man passed

the wallet to the defendant, Homer. The man who took the wallet was tall, considerably taller than Homer. That man was not apprehended and his name does not appear in the record. The man who had taken the wallet then moved to the rear of the bus and Homer tried to leave by the front door, but was blocked by Johnson. As Johnson blocked the exit, the defendant drew a knife and threatened him, but Johnson held him off with his fishing rod. The bus driver, hearing the commotion, stopped the bus and went to get a policeman.

The taller man returned to the front of the bus, and Homer passed the wallet back to him. By this time, Johnson had backed out the front door of the bus, but was still blocking Homer's exit. The taller man left the bus by the side door, came around to the front, returned Johnson's wallet, which he said had been lying on the steps of the bus, and then proceeded to beat Johnson severely, causing him to be hospitalized for over two weeks. The man then left the scene and disappeared. As Johnson lay on the ground, Homer came over to him and, waving his knife, said, "I ought to kill you for squawking." The police arrived and took Homer and Johnson to the police station.

Robert Zeigler testified that he was on the bus, and that he saw Homer pass the wallet to "the big fellow." He further testified that Homer had a knife in his hand as he tried to push by Johnson to leave the bus. During the course of the examination, the prosecutor claimed to be surprised by Zeigler's statement that the wallet was passed to the other man, instead of from the latter to Homer, as Johnson had testified, and he attempted to have the witness recall a conference before the trial, in which Zeigler had apparently said that the taller man had passed the wallet to Homer. The effort was not successful.

Ida Mae Cannon testified that she had been sitting near Johnson on the bus, that she heard him shout, "You have my pocketbook," and saw a large man pass a wallet to

Homer. Homer had a knife and threatened Johnson as he tried to push by him and get off the bus.

The driver testified that he heard a commotion and stopped the bus, that he saw Johnson, Homer, and a taller man, that Johnson was in front of Homer, preventing Homer from leaving the bus, and that Johnson was shouting that he wanted his wallet back. He said that Homer had a jacket over his arm and that he did not see a knife.

Police officer Baer, who took Homer and Johnson to the station, testified that Johnson told him that Homer had taken his wallet. He searched the defendant at the scene but did not find a knife. Officer Schmidt, assigned to investigate the case, stated that he talked to Homer at the police station and that Homer said that he did not know why he was arrested and refused to answer any questions.

The defendant took the stand. He admitted that he was on the bus, but denied participation in the crime. He testified that he was held in jail four days without knowing why he had been arrested. He stated that his real name was James Cummings, that Joe Homer was an *alias* which he used for this arrest and that the address which he gave the police was incorrect. The prosecutor cross-examined him at length about his refusal to answer questions put to him by officer Schmidt and as to whether he was accused of the crime by Johnson in the presence of the arresting officers.

In rebuttal, the prosecution called officer Hayes, the driver of the patrol wagon, who testified that Johnson had told him about being assaulted by a man who had taken his wallet and passed it to Homer and that Homer had said nothing, although he was within hearing distance. The prosecution then offered in evidence a prior conviction of the defendant under the name of James Coleman, another *alias,* for the crime of larceny.

In our opinion the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. The victim,

Johnson, testified that he saw his wallet removed from his person by another man and passed to the defendant, who thereupon tried to push by him while carrying the wallet in one hand and threatening him with a knife in the other. Ida Mae Cannon testified that she saw the other man pass the wallet to Homer, and that she saw Homer try to force his way out of the bus by threatening Johnson with a knife. The testimony of Robert Zeigler also corroborates the defendant's attempt to force his way off the bus with a knife. It is argued that the testimony of Zeigler was inconsistent with that of the victim and of Ida Mae Cannon on the question as to whether the wallet was passed from Homer to the other man, or *vice versa*. The sequence of events was rapid, and Zeigler may have seen the second transfer of the wallet, when the tall man got it back from Homer. In any event, his testimony establishes the defendant as a participant in the crime.

It is argued that the prosecutor's attempts to reconcile the apparent inconsistency in Zeigler's testimony by referring him to a conference before trial in the witness room was improper, as tending to impeach his own witness. Objection to this line of inquiry came late, and the statement of the trial judge indicates that when objection was ultimately made he felt that the questioning on the subject had gone so far that it should be completed. But even if the impropriety of this inquiry be conceded, we do not think that it was prejudicial in the light of the other evidence of guilt.

Defendant complains of the admission of the testimony of Johnson and two of the arresting officers to the effect that when Johnson pointed out the defendant as a participant in the theft and asked that he be taken into custody, the defendant remained silent. When an accusation is made under circumstances which would naturally call for contradiction or reply, evidence of the accusation and of the silence of the person accused is admissible because

it gives rise to an inference of the truth of the accusation. The accusation is not hearsay, because it is offered not for its truth, but to show the significance of the reaction of the accused. (McCormick on Evidence, sec. 247; Wigmore on Evidence, 3d ed., sec. 1071ff; *People* v. *Kozlowski,* 368 Ill. 124; *People* v. *Pfanschmidt,* 262 Ill. 411, 448-9.) The surrounding circumstances must always be carefully considered. Here the witnesses testified to the position of the parties when the accusation was made. The defendant's denial that he heard the accusation did not preclude its admission. Whether the accusation was heard, and whether the other circumstances were such that a response would normally be made, were questions which the trial judge had to determine, and it does not appear that he erred in holding the testimony admissible.

Defendant also contends that the court erred in permitting officer Schmidt, who investigated the matter, to testify that while the defendant was held in jail he refused to answer any questions concerning the charge against him. The inquiry was improper, but no objection was made in the trial court. Later the defendant testified on his direct examination that he was held in jail four days without knowing that he was charged with any wrongdoing. The prosecutor then cross-examined him at length about his conversations with officer Schmidt. We have previously held that a person accused of crime need not make a statement to the police, and that evidence of a refusal to make such a statement is prejudicial error. (*People* v. *Rothe,* 358 Ill. 52.) In the present case, however, the cross-examination was designed to show that shortly after the offense the defendant knew that he was charged with it, and in view of the defendant's testimony it was not improper.

The case was tried by an assistant State's Attorney. After the evidence was in, the case was continued until the following morning for disposition. When the case was

called the next day, the State's Attorney himself was present. Just prior to the opening of court the State's Attorney had a private conference with the trial judge in his chambers. When objection to this conference was made by counsel for the defendant, the judge and the State's Attorney both stated that the visit was purely social in character, to confirm a dinner engagement, and that neither this nor any other pending case was discussed. Upon this record the circumstance does not afford a basis for reversal.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*