REVEREND ELIAS J. JONES, Petitioner-Appellant, *v.* THE MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (5th Division)   No. 83—294

Opinion filed February 10, 1983.

Burton S. Odelson and Mark H. Sterk, both of Evergreen Park, for appellant.

Michael Levinson and Franklin J. Lunding, Jr., both of Chicago, for ap-

pellee Municipal Officers Electoral Board.

Nathanial R. Howse, of Chicago, for appellee Charles E. Johnson.

JUSTICE SULLIVAN delivered the opinion of the court:

Petitioner appeals from an order affirming a decision by the Municipal Officers Electoral Board (the Board) striking his name from the February 22, 1983, Aldermanic Ballot. He contends that (1) the statement of economic interests he filed was in substantial compliance with pertinent sections of the Illinois Governmental Ethics Act (Ill. Rev. Stat. 1981, ch. 127, pars. 604A—101, 604A—104, 604A—105) (the Ethics Act) and the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5); and (2) the removal of his name from the ballot was an improper sanction for violation of section 10—5—1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5.1).

As a candidate for Chicago alderman from the Third Ward, petitioner was required to file a statement of economic interests in relation to that office. (Ill. Rev. Stat. 1981, ch. 46, par. 10—5.) That statement must also comply with section 4A—104 of the Ethics Act (Ill. Rev. Stat. 1981, ch. 127, par. 604A—104), which provides in relevant part:

"The statement of economic interests required by this Article *** shall contain substantially the following:

STATEMENT OF ECONOMIC INTERESTS
(TYPE OR HAND PRINT)

_____

(name)

_____

(office or position of employment for which this statement is filed)"

The pertinent portion of the statement filed by petitioner was as follows:

"STATEMENT OF ECONOMIC INTERESTS

TO BE FILED WITH THE COUNTY CLERK

(TYPE OR HAND PRINT)

Reverend Elias J. JOnes          3rd WArd
_____
                    (name)

Pastor of 1st Unity Missionary Baptist Church
_____
(office or position of employment for which this statement is filed)"

Petitioner also filed petitions for nomination which included the title "Reverend" before his name which were admittedly in violation of section 10—5.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5.1), which provides:

> "In the designation of the name of a candidate on a certificate of nomination or nomination papers the candidate's given name or names, initial or initials, a nickname by which the candidate is commonly known, or a combination thereof, may be used in addition to the candidate's surname. No other designation such as a title or degree, or nickname suggesting or implying possession of a title, degree or professional status, or similar information may be used in connection with the candidate's surname *** ."

Objections to petitioner's nomination papers were the subject of a hearing before the Board, which struck his name from the ballot after determining that he had violated section 10—5.1 of the Election Code and that he failed to file a statement of economic interests as required by the Ethics Act. The Board's decision was affirmed by the trial court, and this appeal followed.

OPINION

Petitioner first contends that inclusion of the words "3rd Ward" next to his name constituted substantial compliance with the require-- ment that his statement of economic interest include "the office *** for which this statement is filed."

Initially, we note that a factual determination of the electoral board will not be reversed unless it is contrary to the manifest weight of the evidence (*Panarese v. Hosty* (1982), 104 Ill. App. 3d 627, 432 N.E.2d 1333); that is, unless the decision lacks "some competent evidence in the record sufficient to support the agency finding" (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 538, 341 N.E.2d 394, 399).

The Board sustained the objections on the bases (1) that the petition violated section 10—5.1 of the Election Code; and (2) "for failure to file a Statement of Economic Interests in relationship to the office for which candidate is seeking election as required by the Illinois Governmental Ethics Act." Petitioner agrees that absent the words "3rd Ward," handwritten after petitioner's name, the statement in question would not be in compliance with the Ethics Act, but it is his position that their inclusion brings the statement into compliance. He maintains that it may be presumed the statement was filed in relation to the aldermanic position, since it was filed concurrently with his nomination papers for that office. We note, however, not only that the

statement is filed separately from other nomination papers and with a different governmental agency, but also that it makes no reference to those papers. Furthermore, such a statement is also filed by current public officials as well as by certain governmental employees and persons seeking employment, which further negates any presumption that the filing was in reference to an election.

■ It thus appears clear to us that the inclusion of the words "3rd Ward" does not describe the office of alderman of the Third Ward, as required not only by section 4A—104 of the Ethics Act but also by section 10—5 of the Election Code, which provides that "[n]omination papers *** are not valid if the candidate named therein fails to file a statement of economic interests *** *in relation to his candidacy* ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 46, par. 10—5(3).) In light thereof, we find that the Board's determination in this regard is not against the manifest weight of the evidence.

Petitioner further argues, relying on *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292, that section 4A—104 is directory rather than mandatory, and maintains that removal from the ballot is therefore not a proper sanction for failure to comply. The Board contends that inclusion of the office sought is made mandatory by section 10—5 of the Election Code, which provides that all nomination papers are invalid if a candidate fails to file a statement "in relation to his candidacy."

A mandatory provision is "one the omission to follow which renders the proceeding to which it relates illegal and void" (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 564, 429 N.E.2d 1292, 1296), and the question presented by this argument is whether the legislature intended to create a mandatory provision by requiring that a statement be filed in relation to a candidacy. Where the language of a statute is plain, there is no need for interpretation (*Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 403 N.E.2d 225); however, where interpretation is required, we will select the construction which leads to a logical result (*Board of Education v. Community High School District No. 211* (1967), 89 Ill. App. 2d 481, 232 N.E.2d 316), and we must consider the object to be attained (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31) and the result of various interpretations of the act (*People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 327 N.E.2d 338).

■ Here, the provision in question should be considered not only in relation to the Election Code as a whole (*Huckaba v. Cox* (1958), 14 Ill. 2d 126, 150 N.E.2d 832), but also in relation to section 4A—104 of the Ethics Act, to which specific reference is made. The Election

Code requires that candidates comply with section 4A—104 which, in directory rather than mandatory terms, requires candidates to reveal, among other things, the office to which they seek election. It thus appears that the use of the phrase "in relation to his candidacy" in section 10—5 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5) is redundant, since that section incorporates section 4A—104 by reference containing the same phrase. It is a general rule of statutory construction, however, that statutes should be construed so that no sentence, clause or word is superfluous. (*In re Estate of Cregar* (1975), 30 Ill. App. 3d 798, 333 N.E.2d 540.) Therefore, considering that repetition of the requirement served some purpose, we believe the most logical interpretation is that the legislature intended to make mandatory, rather than directory, the inclusion of the office sought, for that is the sole difference between the requirements of section 4A—104 and section 10—5.

This construction is bolstered by consideration of the purpose of this statute and the result of a contrary interpretation. The public has a right to know of any financial dealings, however indirect, between a candidate and the unit of government in which he seeks office. The provisions of the Election Code are designed to facilitate that right. If we accept petitioner's argument that failure to reveal the office sought does not affect the validity of his nomination petition, then the requirement of a statement of economic interests becomes meaningless. Furthermore, if the office is not revealed, then the truth of the candidate's answers on his statement can never be tested, for they are not made in reference to any office or position of employment.

Petitioner next contends that removal of his name from the ballot was an inappropriate sanction for violation of section 10—5.1 of the Election Code. (Ill. Rev. Stat. 1981, ch. 46, par. 10—5.1) He argues that the integrity of the election process would be preserved by merely deleting the title "Reverend" from the ballot.

Petitioner's argument assumes that the sole purpose of prohibiting the use of a title on nomination papers is to prevent that title from appearing on the ballot. However, we note that the identical restrictive language is used in the Election Code to eliminate titles or degrees on petitions for nomination (Ill. Rev. Stat. 1981, ch. 46, par. 7—10.2), on certificates of nomination or nomination papers (Ill. Rev. Stat. 1981, ch. 46, par. 10—5.1), on primary ballots (Ill. Rev. Stat. 1981, ch. 46, par. 7—17) and on general election ballots (Ill. Rev. Stat. 1981, ch. 46, par. 16—3). It appears, then, that section 10—5.1 is unrelated to the use of titles on a ballot, since that problem is the subject matter of a separate section of the statute. Rather, it was obvi-

ously the intention of the legislature to ban the use of titles at any stage of the election process, not just at the final stage. Clearly, the purpose of these provisions is to prevent a candidate from unduly influencing voters in his nomination as well as in his election.

It is possible that a voter, seeing the title "Reverend" on a nominating petition, would be induced to sign that petition on the strength of that title, whether or not he was familiar with the candidate's abilities. We do not know whether that was the case here, but the statute was designed to eliminate the need for inquiry into the reasoning processes of the numerous persons who sign a candidate's petition. Petitioner argues, however, that under the reasoning of *Richards v. Lavelle* (7th Cir. 1980), 620 F.2d 144, the remedy of removing the title "Reverend" from the ballot would be a reasonable sanction which still preserved the integrity of the ballot. We believe that case to be inapposite, for there the court was able to fashion a remedy which accommodated the State's interest in an orderly election procedure and the candidate's due process rights. In the instant case, we are concerned not merely with orderly procedure but with conduct in direct violation of the Electoral Code, and the remedy petitioner urges us to adopt does nothing to solve the problem which the statute in question seeks to avoid. Moreover, were we to accept petitioner's remedy, we might encourage others in the future to consider the use of titles on nomination papers knowing that it would result only in the removal of the titles on the ballots.

■ Finally, we note that at the time these nomination papers were filed, the harm had already occurred—nomination petitions were circulated bearing the title "Reverend." The question for the Board, then, was not whether the title should go on the ballot, but whether the nomination process was tainted. The statute itself mandates the Board's answer to that question, and the only possible remedy was removal of petitioner's name from the ballot.

For the foregoing reasons, the order of the trial court affirming the Board's decision is affirmed.

Affirmed.

LORENZ and O'CONNOR, JJ., concur.