H. C. BOYD, Petitioner-Appellant and Cross-Appellee, v. ROBERT FORD, Wood River Township Supervisor, *et al.*, Respondents-Appellees (George Myers, Objector-Respondent-Appellee and Cross-Appellant).

Fifth District   No. 5—83—0674

Opinion filed April 4, 1985.

KARNS, J., specially concurring.

Rod Pitts, of Smith, Larson & Pitts, of East Alton, for appellant.

Dean E. Sweet, of Holland, Sweet & Barr, of Wood River, for appellee George Myers.

Leonard F. Berg, of Wood River, for other appellees.

PRESIDING JUSTICE JONES delivered the opinion of the court:
Petitioner appeals from an order of the trial court that affirmed a decision of the Wood River Township Electoral Board to dismiss a petition to call a referendum upon a proposition to discontinue the maintenance and operation of the Wood River Township Hospital.

On December 7, 1982, petitions signed by 2,463 persons purporting to be voters of Wood River Township were filed with the town clerk of Wood River Township, Madison County. The petitions recited that "We, the undersigned voters of Wood River Township pursuant to chapter 139, Section 160.3 of the Illinois Revised Statutes, do hereby request that a referendum be held to submit the proposition to discontinue the maintenance and operation of the Wood River Township Hospital." The petitioners designated H. C. Boyd as their attorney in fact, and no issue is raised concerning the sufficiency of the petitions or the number of signatures they contain. In this opinion we refer to H. C. Boyd and the signers of the petition as Boyd, or petitioner or appellant.

The electoral board of the township, comprised of the township supervisor, the town clerk and a town trustee, set a hearing on the objection for December 18, 1983, and gave the appropriate notice. Objection to the petitions was filed by one George Myers on December 13, 1982. The basis of the objection was that the hospital was organized pursuant to the authority of sections 1 through 11 of the township hospital act (Ill. Rev. Stat. 1945, ch. 139, pars. 160.6 through 160.16), and the legislature did not provide, and has not provided, a means or method whereby the voters of a town may seek a referendum to discontinue a hospital organized under that act. The objection continued by asserting that the petition to which objection was made sought to proceed under the authority of section 3 of "An Act to au-

thorize townships to levy a tax for the purpose of maintaining and operating public non-sectarian hospitals" (Ill. Rev. Stat. 1981, ch. 139, par. 160.3), which is inapplicable to the Wood River Township Hospital and, accordingly, unavailable to petitioners to secure the referendum on discontinuance.

The hearing was held as scheduled. The petitioner did not appear; the objector did, in person and by attorney. Following evidence and argument, the electoral board, by a two-to-one vote, sustained the objection by a written order. The basis of the board's decision was that the referendum procedure provided in section 3 (Ill. Rev. Stat. 1981, ch. 139, par. 160.3) was inapplicable to Wood River Township Hospital and was, accordingly, unavailable to petitioner.

Petitioners, through H. C. Boyd, filed a petition for review of the order of the electoral board in the circuit court on December 27, 1982, pursuant to section 10—10.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1). We note that both petitioner and respondents have treated the objections and the procedures thereon as being conducted pursuant to section 10—10.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1). Since the petition for referendum sought to present a public question to a referendum, objections and proceedings thereon would appear to be governed by section 28—4 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 28—4). In essence, the petition for review asserted that since section 3 was passed seven days after section 1 of "An Act authorizing any town *** to establish *** a public hospital ***" (Ill. Rev. Stat. 1981, ch. 139, par. 160.6), "the Legislature, basing their decision on the title of Section 160.3, 'Petition and Election for Discontinuance', [sic] would have fairly concluded that such a title would have applied to both types of hospital encompassed within the one act, 'Hospitals', [sic] which was from Section 160.1 through 160.16 ***."

A hearing was held on the petition for review on August 17, 1983. Petitioner Boyd was present with counsel; the respondents and the objector were each represented by separate counsel. No issue was raised by any of the parties regarding the nature of the hearing in the circuit court. Without objection, the court received exhibits into evidence consisting of certified copies of three acts of the legislature and a letter from one of the editors of West Publishing Company. Arguments were presented, and, at their conclusion, the court announced its decision orally and followed this with a written order filed on September 9, 1983. The circuit court affirmed the order of the electoral board. Petitioner Boyd, for himself and on behalf of the 2,463 signatories of the petition, appeals from the circuit court's order.

■ We must initially consider an issue raised by the appellees in a motion to dismiss the appeal, which we elected to consider with the merits of the case. In their motion the appellees argue that this court has no jurisdiction to consider this appeal because decisions of a circuit court in reviewing orders of an electoral board are final under section 10—10.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1) and may not be further appealed to the appellate or supreme court. Appellees cite two decisions of this court wherein we expressly so held, *Petterson v. Scoville* (1980), 83 Ill. App. 3d 746, 404 N.E.2d 795, and *Lawrence v. Board of Election Commissioners* (1977), 45 Ill. App. 3d 776, 360 N.E.2d 168.

Our examination of decisions of the supreme court and other districts of the appellate court have caused us to reexamine our decisions in *Petterson* and *Lawrence*. We find two cases of the supreme court entered in cases of review of orders of electoral boards, *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 344 N.E.2d 443, and *Dooley v. McGillicudy* (1976), 63 Ill. 2d 54, 345 N.E.2d 102. These cases indicate the appealability of final judgments of the circuit court in such cases. Although the supreme court in these two cases considered such orders in the context of a *mandamus* proceeding, there is little room for doubt that they indicate the further appealability of a judgment of the circuit court reviewing the decision of an electoral board. Beyond *Lewis* and *Dooley*, two districts of the appellate court have expressly declined to follow *Petterson* and *Lawrence*. In *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292, the court reasoned that the right to appeal from all final judgments, conferred by article VI, section 6, of the Illinois Constitution, includes final judgments in cases where the trial court has reviewed a decision of an electoral board. In *Gilbert v. Municipal Officers' Electoral Board* (1981), 97 Ill. App. 3d 847, 423 N.E.2d 952, the court reasoned that a determination that judicial review of an electoral board's findings ends with the judgment of the trial court would constitute an unconstitutional limitation upon the exclusive authority of the supreme court to make rules governing appeals, and Supreme Court Rule 301 (87 Ill. 2d R. 301) confers the right of appeal from a final judgment of a circuit court in a civil case. We regard the reasoning of the *Havens* and *Miller* cases as persuasive, if not unassailable.

Without any discussion of the issue of appealability, the appellate court has reviewed final orders of the circuit court entered upon review of decisions of an electoral board in *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, *Panarese v. Hosty* (1982), 104 Ill. App. 3d 627, 432 N.E.2d 1333, *Jones v. Municipal Officers Electoral Board* (1983), 112

Ill. App. 3d 926, 446 N.E.2d 256, and *Madden v. Schumann* (1982), 105 Ill. App. 3d 900, 435 N.E.2d 173.

In view of the foregoing authorities, we must conclude that our cases of *Petterson v. Scoville* and *Lawrence v. Commissioners* were improvidently decided, and we decline to follow them in this and all subsequent cases. The concern expressed in *Petterson* and *Lawrence* of insufficient time to consider an appeal from judgments reviewing electoral board decisions has been resolved elsewhere by the expedient of accelerated briefing and oral argument schedules and by oral announcement of the appellate decision followed in due course by written disposition. Those same expedients are available to this court.

Upon consideration of the appeal upon its merits, we have concluded that the order of the trial court must be affirmed. To sustain his objection, the appellant seeks to show that there is an interplay between two acts of the legislature that authorized townships to become involved in the creation and operation of hospitals and the funding of public, nonsectarian hospitals. Petitioner finds such interplay between the two acts to have been created by first the insertion of and later the deletion of footnote references in certain sections of the Illinois Revised Statutes published by the West Publishing Company.

In 1945 the legislature passed two acts that authorized townships to become involved with hospitals. The first in point of time was approved July 17, 1945. It contained paragraphs numbered 1 through 11 and was entitled "An Act authorizing any town having a population of less than 500,000 to establish, acquire by purchase or otherwise construct, improve, extend, repair, equip, maintain and operate a public hospital and to levy taxes and issue bonds therefor." This enactment was placed in the Illinois Revised Statutes, 1945, as Chapter 139, paragraphs 160.6 through 160.16. For convenience, we will hereafter refer to this act as the township hospital act.

The act second in point of time was approved July 24, 1945. It contained paragraphs numbered 1 through 5 and was entitled "An Act to authorize townships to levy a tax for the purpose of maintaining and operating public non-sectarian hospitals." This enactment was placed in the Illinois Revised Statutes, 1945, as Chapter 139, paragraphs 160.1 through 160.5. For convenience, we will hereafter refer to this act as the township hospital fund act.

As may be seen from the titles and language of the two acts, the township hospital act was designed to authorize townships of less than 500,000 population to acquire, finance and operate a hospital. The township hospital fund act was designed for an entirely different purpose. It provided a means and mechanism whereby a township

could levy a tax to create a fund for contributing to the maintenance and operation of a public, nonsectarian hospital owned and operated by a governmental unit or entity other than the township itself. Under this act the fund-contributing township plays no part in the management or operation of the recipient hospital other than to serve as an additional conduit of public moneys for use in maintenance or operation.

Only one section in the two acts we are considering made any provision for discontinuance of the activity authorized. That was section 3 of the township hospital fund act. It made provision for a process of a petition for and an election upon a proposition to discontinue maintenance and operation of "the public non-sectarian hospital." The language of this section 3 made no reference to any part of the township hospital act, nor did it otherwise give any indication that it could be utilized in any way in connection with operations undertaken pursuant to the township hospital act. In a similar manner, the township hospital act made no reference to any part of the township hospital fund act, including its section 3.

With certain changes we deem unimportant to our disposition, both the township hospital act and the township hospital fund act remain in effect and are found in the same chapter and sections of the Illinois Revised Statutes for 1981 as they were in the 1945 edition.

■ The Wood River Township Hospital was organized in 1946 under the authority of the township hospital act, and it has continued in operation since that time. Petitioner sought an election on a proposition to discontinue the maintenance and operation of the hospital pursuant to the provisions of section 3 of the township hospital fund act (Ill. Rev. Stat. 1981, ch. 139, par. 160.3). Although, as we have indicated, section 3 has no express application to the act of the legislature under which the Wood River Township Hospital is operated, petitioner seeks to have section 3 made applicable to the township hospital act by an argument based upon the initial use and, later, the discontinuance of use of a footnote appearing in section 3.

In the 1945 edition of the Illinois Revised Statutes, section 3 read:

> "Whenever at least ten percent of the voters of any township which has adopted the provisions of this Act,[1] ***."

At the end of the paragraph the footnote reference was:

> "[1]Sections 160.1–160.5 of this chapter."

This footnote was carried in the Illinois Revised Statutes with all editions through that of 1977. Beginning with the 1979 edition, however, this particular footnote reference was omitted. From this omission the petitioner argues that the statute "is no longer limited to hospitals

under Sections 160.1—160.5, meaning that it is no longer limited to those towns with a population under 500,000." He contends that the statute now permits the right to petition for referendum to discontinue a hospital in a town with a population of less than 500,000.

■ Petitioner's argument is not well taken. The footnote referred to does not effect the interconnection of the township hospital act and the township hospital fund act as petitioner contends. Simply stated, the footnote is not, and never was, a part of the township hospital fund act. The once present, and later deleted, footnote presents no occasion for interpretation or construction. Likewise, the large-type topic designation "HOSPITAL" placed center-column in the Illinois Revised Statutes before section 160.1 does not serve to create an integrated statutory scheme of the legislature in dealing with the powers of townships to operate or finance hospitals. The two acts remain separate and independent in their provisions.

The footnote referred to, and its designating numeral, as well as the topic designation "HOSPITAL," were inserted in the Illinois Revised Statutes by the compiler and publisher, the West Publishing Company. While the Illinois Revised Statutes published by West are authoritative and have gained widespread, if not universal, acceptance by the bench and bar of Illinois, they are nevertheless not the official statutes of the State of Illinois and have no officially recognized status. The footnotes and the topical headings (where not an integral part of an act as adopted by the legislature) are inserted in the Illinois Revised Statutes by the editors and compilers as a convenience for their users, but they are not official and cannot serve to modify in any way any of the provisions of acts of the legislature wherein they may be editorially inserted.

Illinois does not have an officially recognized compilation of all its statutes in effect from time to time. Its official statutes are the bills enacted into law by the legislature and either signed by the governor, permitted by the governor to become law without his signature, or effected by legislative override of a gubernatorial veto. The source of Illinois statutes, "bills" in legislative parlance, is found in article IV, sections 8, 9 and 10 of the Illinois Constitution of 1970. Once bills are enacted and become law, they are compiled by the Secretary of State into Session Laws (Ill. Rev. Stat. 1983, ch. 127, par. 132.230), and certified by the Secretary of State (Ill. Rev. Stat. 1983, ch. 124, par. 8). Although the Session Laws have official status, and may be resorted to as proof of the content of the law as enacted by the legislature (Ill. Rev. Stat. 1983, ch. 124, par. 8), they still do not constitute a readily usable compilation of Illinois statutes in effect from time to

time. The Session Laws are just a compilation of the laws enacted by each session of the legislature. The bills enacted in each session of the legislature vary widely in their application to the existing, viable statutory laws in force at the time. The bills may add new statutes, or repeal, modify or amend previously existing statutes. By no means does the legislature concern itself with all pre-existing legislation in each of its sessions. Accordingly, if one were to proceed solely with the officially published Session Laws, in order to determine the currently effective provisions on any given topic, it would be necessary to examine all issues of the Session Laws from the inception of legislative treatment of the subject to a current date, a most laborious and time-consuming process. Fortunately, bench and bar are spared this search when they look for statutory treatment of any given topic. The publishers of the Illinois Revised Statutes, West Publishing Company, attend to the addition to, and modification or deletion of, the statutory law of Illinois by revising and publishing the Illinois Revised Statutes following each publication of the Session Laws to include and conform the additions, modifications and deletions to the previous issue of the Illinois Revised Statutes.

We have indulged in the foregoing discussion of the status of the official Session Laws and the unofficial Illinois Revised Statutes in order to demonstrate that the footnote and its numerical reference relied upon by the petitioner are not, nor were they ever, a part of the township hospital act or the township hospital fund act. Thus, petitioner's argument based thereon must fail.

While section 3 of the township hospital fund act makes provision for discontinuance of functions under that act, there is no such comparable provision in the township hospital act. The legislature has not seen fit to provide any means or mechanism for discontinuance of operations of a township hospital. If the legislature elects to permit the creation and operation of a township hospital, but denies the township the power to discontinue operations of such hospital, it may do so. Townships, like all other non-home-rule units of local government, have no inherent powers, but only those granted to them by the constitution or authorized by statute. (*Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 433 N.E.2d 726; *Town of the City of Peoria v. O'Connor* (1980), 85 Ill. App. 3d 427, 408 N.E.2d 11; Ill. Const. 1970, art. VII, sec. 8.) This being the case, the petitioner's only avenue for relief must be in asking the legislature to enact legislation establishing a procedure whereby they may seek the discontinuance of operations of the Wood River Township Hospital.

Petitioner Boyd devotes a part of his brief to an argument that the township hospital act is unconstitutional in that it discriminates against inhabitants of townships of less than 500,000 population by denying them a procedure to follow for discontinuance of operations of a township hospital. This argument was not presented to the trial court and, accordingly, will be deemed waived. *People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE KARNS, specially concurring:

I concur in the decision reached but would make several comments on the procedure employed by the plaintiffs.

The Wood River Township Electoral Board is an inappropriate body to decide the substantive issue here involved, and such a decision is beyond its statutory authority to make. The provisions for electoral boards are contained in articles of the Election Code dealing with the making of nominations by established political parties and minor political parties and groups. (Ill. Rev. Stat. 1983, ch. 46, pars. 7—13, 10—10.) The function of electoral boards is to pass on the validity of petitions for nomination of candidates. They determine the sufficiency of the petitions as to number of valid signatures, the qualifications of candidates to hold the office sought, and other questions as to the form of the nominating papers. It is inconceivable that it was the intent of the General Assembly to vest electoral boards with the judicial power to decide the type of question presented here, which only a judicial officer is qualified to adjudicate. This does not mean that plaintiffs do not have a remedy; an action for injunctive relief could be brought to require the town clerk to place the proposition on the ballot.

If I am correct in this appraisal of the procedure employed, then the majority's discussion of the appealability of the decision of the circuit court is unnecessary. I would add, nonetheless, that in my opinion the proper decision was reached by this court in *Petterson v. Scoville* (1980), 83 Ill. App. 3d 746, 404 N.E.2d 795, and *Lawrence v. Board of Election Commissioners* (1977), 45 Ill. App. 3d 776, 360 N.E.2d 168, neither of which decisions have been disapproved by the supreme court.

As originally enacted, the decision of an electoral board was final

and not subject to judicial review except by extraordinary writ. (*People ex rel. Schlaman v. Electoral Board* (1954), 4 Ill. 2d 504, 122 N.E.2d 532; Ill. Rev. Stat. 1983, ch. 46, par. 10—10.) Thereafter, the Election Code was amended to provide that prompt judicial review of the decisions of electoral boards could be had in the circuit courts. (Ill. Rev. Stat. 1983, ch. 46, par. 10—10.1.) I do not believe that this limited review of these administrative decisions of political questions should be subject to further review under the usual appellate process. Normally, the election in question would be held long before the decision of the circuit court could be reviewed on appeal, unless the supreme court would choose to consider the matter *de novo* under its exclusive grant of appellate jurisdiction to issue extraordinary writs. Ill. Const. 1970, art. VI, sec. 4(a).

In both *Dooley v. McGillicudy* (1976), 63 Ill. 2d 54, 345 N.E.2d 102, and *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 344 N.E.2d 443, the decisions of the electoral board were reviewed directly by the supreme court by the grant of leave to file an original action for writ of *mandamus*, not by the usual appellate process. In *Dooley*, the court noted that the time factors would normally render the usual appellate process futile.

Further appeal of these administrative decisions should not replace the function of traditional proceedings in *quo warranto* or *mandamus*.